## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

NEIL ROBINSON,

      Petitioner,

v.                                                         No. CV 11-1142 JH/LAM

RAY TERRY,

      Respondent.


## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

### PROPOSED FINDINGS

**THIS MATTER** is before the Court on Petitioner's *Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (Doc. 1)* and *Motion for Appointment of Counsel Pursuant to 18 U.S.C. § 3006A (Doc. 2)*, both filed December 29, 2011.  The United States, on behalf of Respondent Ray Terry, filed a response to the Petition on January 19, 2012.  [*Doc. 8*].[2]  Petitioner filed a reply on February 2, 2012 [*Doc. 9*], and a supplemental reply (with attachments) on February 9, 2012 [*Doc. 10*].  In addition, Petitioner sent a letter dated February 26, 2012, to the Court, which was filed March 5, 2012 [*Doc. 11*], filed additional exhibits on March 28, 2012

---

[1] **Within fourteen (14) days after a party is served with a copy of these Proposed Findings and Recommended Disposition, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommended disposition.  A party must file any objections with the Clerk of the United States District Court for the District of New Mexico within the fourteen (14) day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.  Pursuant to Fed. R. Civ. P. 72(b)(2), a party may respond to another party's objections within fourteen (14) days after being served with a copy of the objections.**

[2] On February 1, 2012, Respondent sent to the undersigned the compact disc referenced in its response [*Doc. 8* at 3, n.1].  In his response, Respondent states that it will provide a copy of the disc to Petitioner as well.  The disc received by the undersigned is lodged with the clerk of the Court.

[*Doc. 12*], and sent a letter to the Court dated April 24, 2012, with exhibits attached, which was filed May 2, 2012 [*Doc. 13*].  United States District Judge Judith C. Herrera referred the claims raised by Petitioner in this case to the undersigned for proposed findings and a recommended disposition, and a hearing, if necessary.  [*Doc. 6*].  Having considered the parties' submissions, relevant law, and the record in this case, the undersigned recommends, for the reasons set forth below, that Petitioner's ***Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (Doc. 1)*** be **DENIED** and that this case be **DISMISSED without prejudice**.

## <u>*Background*</u>

Petitioner was encountered by Immigration and Customs Enforcement (hereinafter "ICE") on January 8, 2011, and during this encounter he told ICE officials that he was a citizen and national of Jamaica.  [*Doc. 8-1* at 2].  At a hearing before an immigration judge on June 27, 2011, Petitioner's attorney stated that Petitioner was a citizen of Jamaica, and Petitioner stated that he wished to be deported to Jamaica.  *See* CD submitted to Court as an exhibit to *Doc. 8* at Track 3, 00:45 and 00:52 (lodged with Court Clerk).  Petitioner was ordered removed to Jamaica on June 27, 2011.  [*Doc. 8-1* at 19].  After ICE requested a travel document from Jamaica, Petitioner had a telephonic interview with the Jamaican Consulate and told the Jamaican Consulate that he was a citizen of Guyana, not Jamaica.  [*Doc. 1* at 19]; *see also* [*Doc. 8-1* at 22] (case notes in Petitioner's file from July 7, 2011 interview with the Jamaican Consulate, states that Petitioner "claims he bought a frad[u]lent PP with a U.S. visa and used it to enter the U.S.").  ICE then submitted a request for travel documents to the Consulate of Guyana on July 11, 2011, but the request was

2

rejected because the Consulate of Guyana stated that the Republic of Guyana only accepts individuals who were born in Guyana.  [*Doc. 8-1* at 22].

On September 6, 2011, Petitioner was served with an I-229(a) (Revised 12/04/02) form titled "Warning for Failure to Deport," with an attached "Instruction Sheet" setting forth the steps Petitioner was required to take to assist in his removal.  [*Doc. 1* at 12-13].  Petitioner was served with additional copies of this notice and instruction sheet on October 18, 2011; November 15, 2011; December 12, 2011; and January 13, 2012.  *Id.* at 14-15, 21-22, 46-47, and [*Doc. 8-1* at 20-22].  On September 19, 2011, ICE served petitioner with a "Notice of Failure to Comply Pursuant to 8 C.F.R. 241.1(g)."  [*Doc. 1* at 19-20].  This letter explained to Petitioner that he is legally obligated to assist ICE in obtaining travel documents and, specifically, stated that Petitioner is required to provide ICE with his children's birth certificates.  *Id.* at 19 (Respondent states that the birth certificates of Petitioner's children will include Petitioner's name and maybe his nationality [*Doc. 8* at 4 n.2]).  This letter further instructed Petitioner to "attempt to get a travel document on [his] own behalf and present proof of [his] pending application to ICE."  [*Doc. 1* at 19].

On October 17, 2011, Petitioner sent a note to a deportation officer stating that he did not have birth certificates for his children, but that he could try to obtain them.  *Id.* at 36.  Two days later, ICE sent Petitioner information regarding how to obtain birth certificates.  [*Doc. 8-1* at 21 and 24-36].  On October 20, 2011, Petitioner claimed for the first time that he is not able to read or write, even though Petitioner had been engaging in written correspondence with ICE while in custody.  [*Doc. 10*, filed in 11-CV-0893 MV/KBM, at 24]; *see also* [*Doc. 8-1* at 21].  On October 24, 2011 Petitioner provided three names, a date of birth, and a location of birth to an ICE

officer, and an ICE staff member responded asking for more information about the children and mother.  [*Doc. 1* at 35] and [*Doc. 10*, filed in 11-CV-893 MV/KBM, at 22].   In an undated document, Petitioner provided the names, birth dates, and location of birth of his children, and the name of their mother.  [*Doc. 1* at 34].

On November 2, 2011, ICE received a denial letter from the Jamaican Consulate stating that no evidence had been submitted to substantiate Petitioner's Jamaican citizenship, and that interviews with Petitioner had not provided information to assist the Consulate with proving Petitioner's citizenship.  [*Doc. 8-1* at 21].  On November 7, 2011, Petitioner was given another chance to provide information to obtain his children's birth certificates, but, according to the notes in Petitioner's case file, Petitioner stated that he had already provided the information and did not know anything further.  *Id.*  On November 15, 2011, Petitioner told an ICE officer that he was not born in Guyana, but instead was born in Montego Bay, Jamaica, so ICE submitted another request for documents to the Jamaican Consulate.  *Id.*.  During a second telephonic interview with the Jamaican Consulate on November 21, 2011, Petitioner told the Consulate that, although he was raised in Montego Bay, he did not know where he was born  *Id.* at 20.  The Jamaican Consulate stated it could not issue travel documents without documentary proof of Petitioner's nationality.  *Id.* at 20-21.

On December 29, 2011, Petitioner filed his Petition alleging that his continued detention is unreasonable because it exceeds the presumptively reasonable period of six months set forth in *Zadvydas v. Davis*, 533 U.S. 678 (2001).  [*Doc. 1* at 6].[3]  In response, the United States contends that

_____

[3]The Court notes that on October 5, 2011, Petitioner filed a Section 2241 petition in this Court in which he also alleged that his continued detention was impermissible under *Zadvydas*.  *See Robinson v. Terry*, Case No. 11-CV-893 MV/KBM (*Doc. 1* at 6).  The District Judge in that case entered an order granting Respondent's motion to dismiss and
(continued...)

the six-month period has not begun to run because Petitioner has failed to cooperate in obtaining travel documents necessary for his removal, pursuant to 8 U.S.C. § 1231(a)(1)(C).  [*Doc. 8* at 1].

### *Discussion*

Pursuant to 8 U.S.C. § 1231(a)(1)(A), an alien must be removed from the United States within a period of 90 days from when the alien is ordered removed.  There are two exceptions to this 90-day removal period requirement.  First, 8 U.S.C. § 1231(a)(1)(C) states:

> The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.

Second, the Supreme Court while recognizing that the statute "does not permit indefinite detention," nevertheless has held that aliens may be detained beyond the statutory 90-day time period for "a period reasonably necessary to bring about that alien's removal from the United States." *Zadvydas*, 533 U.S. at 689.  In *Zadvydas* the Supreme Court determined that the presumptive period during which the detention of an alien is reasonably necessary to effect his removal is six months.  *Id.* at 701.  After this time period, it is the burden of the petitioner to establish that there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*  If the petitioner is able to make this showing, "the Government must respond with evidence sufficient to rebut that showing."  *Id.*

---

[3](...continued)

dismissing the petition without prejudice, finding that the action was premature because, assuming the six-month period had begun to run, that time-period had not yet expired.  [*Doc. 11*, filed in 11-CV-893 MV/KBM, at 3].

An alien's continued detention past both the 90-day removal period in 8 U.S.C. § 1231(a)(1)(A) and the six-month presumptively reasonable removal period in *Zadvydas* is authorized if the alien "refuses to cooperate fully and honestly with officials to secure travel documents from a foreign government." *Lema v. U.S. I.N.S*, 341 F.3d 853, 856 (9th Cir. 2003). This is because, if a petitioner refuses to cooperate and be honest with immigration officials, the petitioner cannot meet his or her burden to show there is no significant likelihood of removal in the reasonably foreseeable future and the Court "cannot know whether [the petitioner's] removal is a 'remote possibility.'" *Id.* (quoting *Zadvydas*, 533 U.S. at 690).  Specifically, refusing to provide information regarding one's citizenship to the consulate and providing false or misleading information to impede issuance of travel documents, among other acts, have been sufficient evidence for courts to find a prisoner's continued detention is allowed by 8 U.S.C. § 1231(a)(1)(C) and to deny habeas corpus relief.  *See Lema*, 341 F.3d at 857 (finding that the petitioner's failure to provide affidavits from family members to support his claim of nationality, failure to file a new request for travel documents, failure to attempt to contact the consulate, and failure to comply with immigration agency's request to provide certain documents, authorized petitioner's continued detention under § 1231(a)(1)(C)); *Roach v. Holder*, No, 08-51248, 344 Fed. Appx. 945, 946-47, 2009 WL 2998906 (5th Cir. Sept. 21, 2009) (unpublished) (finding that petitioner's repeated filings with the Board of Immigration Appeals interfered with and prevented ICE's efforts to obtain petitioner's travel documents for removal, so petitioner failed to show that there is no significant likelihood of removal in the reasonably foreseeable future, and, therefore, petitioner's continued detention was authorized under § 1231(a)(1)(C)); *Blankson v. Mukasey*, No. 07-10219,

261 Fed. Appx. 758, 759, 2008 WL 122173 (5th Cir. Jan. 14, 2008) (unpublished) ("The district court did not err in denying the petition. Blankson's frequently changing claims of citizenship hampered the DHS's ability to effectuate removal and, under § 1231(a)(1)(C), has served to extend the removal period of § 1231(a)(1)(A)."); *Benn v. ICE*, No. 03-30114, 82 Fed. Appx.139, 140, 2003 WL 22880781 (5th Cir. Dec. 5, 2003) (unpublished) (affirming district court's denial of habeas petition where alien made incomplete and conflicting statements that hampered INS' ability to effectuate his removal and served to extend his removal period); *Riley v. Greene*, 149 F.Supp.2d 1256, 1262 (D. Colo. 2001) (finding that petitioner's refusal to cooperate with his removal, thereby contributing to the delay of his departure, tolls the six-month period to effect his removal and his continued detention is authorized).

Petitioner's removal order became final on June 27, 2011. *See* 8 U.S.C. § 1231(a)(1)(B)(i).[4] Therefore, the Court must determine whether the 90-day removal period and the six-month presumptively reasonable detention period have run, or whether if Petitioner has failed to cooperate fully and honestly with officials to secure travel documents. If the Court finds that Petitioner has failed to cooperate in his removal, he cannot meet his burden to show there is no significant likelihood of removal in the reasonably foreseeable future and, therefore, these time periods would be tolled. Petitioner has been told multiple times what information he must at least attempt to provide to ICE to assist in his removal, and has failed to show that he has made sufficient attempt

---

[4]Petitioner incorrectly states that his removal order became final on July 27, 2011 [*Doc. 1* at 6]. Instead, the order became final on June 27, 2011, because Petitioner waived his right of appeal on that date [*Doc. 8-1* at 1]. *See* 8 C.F.R. § 1241.1(b) ("An order of removal made by the immigration judge . . . shall become final . . . [u]pon waiver of appeal by the respondent."); *see also Singh v. DHS/ICE*, 771 F.Supp.2d 372, 376 (D.N.J. 2011) ("Petitioner's 90-day removal period began . . . when the immigration judge ordered his removal . . ., Petitioner waived administrative appeal, and his removal order thereby became administratively final.") (citing 8 U.S.C. § 1231(a)(1)(B)(i) and 8 C.F.R. § 1241.1(b)).

to provide the requested information.  While Petitioner has given the names, birth dates, and location of birth of his children, and the name of their mother [*Doc. 1* at 34-35],[5] Petitioner has been informed multiple times that this information is insufficient to obtain the birth certificates that may contain information regarding Petitioner's citizenship.  Specifically, ICE has told Petitioner that the State of New York might release the children's birth certificates to ICE, but they need the children's full names, dates of birth, social security numbers, and their mother's complete name, including her maiden name.  [*Doc. 10*, filed 11-CV-893 MV/KBM, at 24]; *see also* [*Doc. 8-1* at 26].  ICE has provided Petitioner with a form to fill out specifying the information they need [*Doc. 8-1* at 36], and Petitioner does not allege that he has filled out this form and submitted it to ICE.  While Petitioner states that he has a restraining order against his children's mother, so he cannot contact her [*Doc. 1* at 37], ICE has made it clear to Petitioner that they will contact her, not Petitioner [*Doc. 8-1* at 36]. Petitioner fails to provide any other explanation to the Court regarding why he has not provided the requested information to ICE.  In order to show that he is cooperating with ICE to secure travel documents, Petitioner must either provide the information set forth above, or explain in detail what attempts he has made to provide the information and why it is impossible for him to obtain it.

Petitioner has also failed to show any effort on his part to "attempt to get a travel document on [his] own behalf and present proof of [his] pending application to ICE," as he has been instructed to do.  [*Doc. 1* at 19].  Petitioner has failed to show that he has attempted to complete the mandatory requirements set forth in the instruction sheet attached to the multiple "Warning for Failure to Depart" notices he has been given.  *See, e.g.,* [*Doc. 1* at 13] (explaining that Petitioner must: submit

---

[5]In addition, it appears that the children's mother's birth date is set forth in the Order of Protection, filed in this case at [*Doc. 10* at 3].

copies of his passports to ICE; apply for a travel document/passport from his embassy or consulate; comply with all instructions from all embassies or consulates for completion of travel documents; submit to ICE birth certificates, national identification cards, and any other document issued by a foreign government indicating his citizenship, nationality, place of birth, and place of residence prior to entering the United States; provide names and addresses of family and friends both in the United States and his country of citizenship, and request that they contact the embassy or consulate in the United States to facilitate the issuance of a travel document; take measures to request reinstatement of his previous nationality; provide ICE with copies of requests to embassies or consulates requesting issuance of a travel document; provide ICE with copies of responses to those requests; and solicit permission from another country to enter that country).

In his latest submission to the Court, Petitioner submitted a letter addressed to "Jamaica Consulate" [*Doc. 13* at 2], correspondence with ICE (*id.* at 4, 5, and 9), and an additional "Warning for Failure to Depart," dated April 4, 2012 (*id.* at 10-11).  Petitioner states in these submissions that he is from Jamaica (*id.* at 2), that he does not know his mother's, half-brother's or half-sister's contact information (*id.* at 5), and that an ICE agent told him that ICE spoke with Petitioner's mother and she told ICE that she does not have a birth certificate for Petitioner (*id.* at 9).  These submissions, however, do not show that Petitioner has applied for a travel document or that he has tried to contact anyone else to help him obtain a travel document, as he is required to do.  The Court notes that, on January 13, 2012, ICE questioned Petitioner about ten people he had been in contact with over the last year, yet Petitioner has not provided information about whether he has asked those people to assist him with his case.  [*Doc. 8-1* at 20].  Petitioner also states that he was raised by his

father, but, even though Petitioner states that his father is deceased [*Doc. 13* at 9], Petitioner fails to state whether his father's family could help him obtain a travel document. Moreover, Petitioner fails to submit any responses from either the Jamaican Consulate or ICE regarding his letters to them. For these reasons, the Court finds that Petitioner has failed to provide sufficient evidence of efforts he has made to assist in his removal, and therefore, Petitioner has failed to establish that there is good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future. *See Lema*, 341 F.3d at 857 ("[W]hen an alien refuses to cooperate fully and honestly with officials to secure travel documents from a foreign government, the alien cannot meet his or her burden to show there is no significant likelihood of removal in the reasonably foreseeable future."); *Pelich v. I.N.S.*, 329 F.3d 1057, 1060 (9th Cir. 2003) ("*Zadvydas* does not save an alien who fails to provide requested documentation to effectuate his removal [because] the detainee cannot convincingly argue that there is no significant likelihood of removal in the reasonably foreseeable future if the detainee controls the clock."). As the court in *Pelich* explained to the petitioner there, if Petitioner were to apply for a travel document and the application is denied, and ICE still will not release Petitioner, then Petitioner's case may be different, but the Court cannot address that issue until Petitioner applies for a travel document and it is either rejected or approved. *See Pelich*, 329 F.3d at 1061 n.3. The Court, therefore, recommends that Petitioner's **Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (Doc. 1)** should be denied.

In addition, the Court recommends that Petitioner's **Motion for Appointment of Counsel Pursuant to 18 U.S.C. § 3006A (Doc. 2)** be denied without prejudice. Petitioner states in the motion that he needs counsel because he is "not well educated about th[is] process." [*Doc. 2* at 3]. At this

point, Petitioner is obligated to provide information to ICE and make efforts to obtain travel documents, or at least show how he has attempted to provide this information and obtain travel documents, which does not require any special education or training.  Moreover, ICE has clearly set out the process for Petitioner in the letters, notifications, and warnings to Petitioner, and has provided forms and information to help him.  Petitioner fails to explain why he needs counsel to comply with these requirements, so the Court recommends that this motion be denied.

*Conclusion*

For the reasons stated above, the Court recommends that Petitioner's ***Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (Doc. 1)*** and ***Motion for Appointment of Counsel Pursuant to 18 U.S.C. § 3006A (Doc. 2)***, be **DENIED**, and that this case be **DISMISSED without prejudice**.

**LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**